**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Earl JOHNSON,**
**Defendant-Appellant.**

No. 81–7097.

United States Court of Appeals,
Eleventh Circuit.

July 11, 1983.

W. Dennis Summers, Atlanta, Ga., for defendant-appellant.

Denver L. Rampey, Jr., U.S. Atty., William P. Adams, Samuel A. Wilson Jr., Asst. U.S. Attys., Macon, Ga., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and LYNNE *, District Judge.

LYNNE, District Judge:

On January 21 and 22, 1971, appellant, David Earl Johnson, was tried under a sin-

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

gle indictment for bank robbery containing three counts charging violations of 18 U.S.C. §§ 2113(a), 2113(d), and 924(c)(2), respectively. He was convicted and sentenced on all three counts. From his convictions he prosecutes this direct appeal. His skillful and conscientious court-appointed attorney urges three grounds for reversal.

(1) The conviction of appellant under the above statutes based on a single transaction of bank robbery with a firearm violates the Double Jeopardy clause of the Fifth Amendment;

(2) Appellant did not receive effective assistance of counsel at trial;

(3) Improper jury charges which prejudiced appellant.

We affirm.[1]

This appeal is a sequel to *Johnson v. United States,* 619 F.2d 366 (5th Cir.1980) (Johnson IV).[2] There the court vacated the sentences imposed under 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c) and remanded the case to the district court for resentencing under 18 U.S.C. § 2113(d), preserving Johnson's right to direct appeal.[3]

## I.

■ The Double Jeopardy clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Here there was but a single prosecution. In the wake of *Johnson IV,* there was but one sentence imposed.

In a trilogy of recent cases the Fifth Circuit has definitively held that multiple convictions in a single trial under 18 U.S.C. § 2113(a) and (d) are permissible but that only one sentence may be imposed.[4] *United States v. Vasquez,* 504 F.2d 555 (5th Cir. 1974), *Forrester v. United States,* 456 F.2d 905 (5th Cir.1972), and *United States v. White,* 440 F.2d 978 (5th Cir.1971).[5] These decisions are binding as precedent in this circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981) (en banc). Moreover, the law of the case doctrine binds us to the ultimate conclusion of *Johnson IV* that vacating the sentences but not the convictions was the proper remedy. 619 F.2d at 369.

Our discussion of Johnson's double jeopardy contention might rest here. However, since there was no articulation of this issue

1. In the posture of this case we approach the issues as though they were presented on a timely direct appeal in the first instance, purged of the impermissible concurrent sentences. We consider irrelevant that at the time of his resentencing Johnson had been released from confinement and that at the time of submission of this appeal he was serving a sentence for bank robbery imposed in another district.

2. Note 1 to the opinion traces the convoluted history of Johnson's futile pro se efforts to obtain post conviction relief. 619 F.2d at 367.

3. The court observed: "Thus, for example, Johnson may raise his Double Jeopardy challenges to two of the three convictions." 619 F.2d at 369.

4. There is a split of authority in the Courts of Appeal. *Accord: U.S. v. Corson,* 449 F.2d 544 (3d Cir.1971) (en banc); *U.S. v. Fried,* 436 F.2d 784 (6th Cir.1971), cert. *denied* 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 714 (1971); *Gerberding v. U.S.,* 471 F.2d 55 (8th Cir.1973). *Contra: O'Clair v. U.S.,* 470 F.2d 1199 (1st Cir.1972), cert. *denied* 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973); *Grimes v. U.S.,* 607 F.2d 6 (2d Cir.1979); *Walters v. Harris,* 460 F.2d 988 (4th Cir.1972), cert. *denied* 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973); *Wright v. U.S.,* 519 F.2d 13 (7th Cir.1975), cert. *denied* 423 U.S. 932, 96 S.Ct. 285, 46 L.Ed.2d 262 (1975).

5. In White, Judge Goldberg, with one eye apparently on the Double Jeopardy Clause, wrote:

Multiple convictions rendered against a single defendant under [18 U.S.C. § 2113(a), (b) and (d) ] are not inherently inconsistent either factually or legally, although cumulative penalties, as a matter of statutory construction, are impermissible. 440 F.2d at 982.

in either of the three opinions and the probability that it was not properly raised by either appellant,[6] we turn to Johnson's vigorous assertion that collateral consequences which flow from multiple convictions under these similar statutes, although but one permissible sentence be imposed, constitute multiple punishments for the same offense which implicate the double jeopardy clause. We do not agree.

■ Assuming, arguendo, that these three statutes proscribe the "same" offense, the point made in oral argument that the multiple convictions in this case might impact upon the defendant's chances of parole is not without substance. If it were established that these multiple convictions had in fact an adverse effect upon consideration of parole it would seem that punishment would be augmented in the double jeopardy context.

However, in January, 1971, when Johnson was convicted, the Board of Parole operated under a broad statute which in effect invested it with unfettered discretion in deciding to release offenders. In 1973, the Board began using a set of guidelines, a practice which has been continued by the Parole Commission.[7] A careful examination of the guidelines published by Board and Commission beginning with 38 Fed. Reg. 31,942–45 (1973) to and including those appearing in 28 C.F.R. § 2.20 (Revised as of July 1982), reveals that there is not the slightest indication that these multiple convictions would have any effect upon eligibility for parole. Indeed, the evidence derived from the guidelines points in the other direction, negating the argument for enhanced punishment.

■ The cases identify collateral consequences which may be expected to arise from additional convictions for the "same" offense. They may be severely capsulated as follows:

(1) Subjection to sentencing under habitual offender or recidivist statutes.

(2) Use for purpose of impeachment of credibility.

(3) Additional stigma or damage to reputation.[8]

While we do not denigrate the interest of the individual in freedom from those consequences, we do not believe they comport with multiple punishments interdicted by the double jeopardy clause. With respect to (1) and (2), when they surface and are sought to be applied in a concrete situation, it would seem that they could be dealt with effectively, while (3) is obviously speculative. It is reasonable to assume that the stigma of the § 2113(a) and § 924(c) convictions is not in addition to, but is merged with, that attached to the § 2113(d) conviction and sentence.

■ Finally, we reject Johnson's double jeopardy claim because he is not now being punished by these collateral consequences.[9]

## II.

In April, 1977, Johnson filed a motion to vacate his sentence, claiming for the first time denial of effective assistance of counsel. That contention is renewed on this direct appeal. Since his motion was denied without an evidentiary hearing, we are re-

6. At oral argument, appellant insisted that the result in each of the pre-Johnson IV decisions was based upon statutory construction.

7. For an exhaustive treatment of the evolution of the parole system, see *Warren v. United States Parole Commission,* 659 F.2d 183, 189–93 (D.C.Cir.1981).

8. *Missouri v. Hunter,* 459 U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (Marshall, J., dissenting); *Wright v. United States,* 519 F.2d at 19; *O'Clair v. United States,* 470 F.2d at 1203.

9. In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Court adverted to potential collateral consequences in resolving the mootness-justiciability dichotomy inherent in application of the concurrent sentence doctrine. It held that "there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." It then went on to sustain Benton's double jeopardy claim based upon his second prosecution for the same offense after an acquittal. Multiple punishments for the same offense was not an issue. We disclaim any reliance upon the concurrent sentence rule in the case sub judice.

mitted to a review of the trial transcript to assess the merit of his complaint.

The legal standard for judging effective assistance of counsel is easier to state than to apply. The black letter law in this circuit informs us that the counsel to which [Johnson] was entitled under the sixth amendment was a counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances. (Citations omitted).

*Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983).

■ Against that standard, we have measured the assistance rendered to Johnson by his court-appointed attorney, G. Mallon Faircloth, Esq., revealed by a careful examination of the transcript of this two day trial. The crucial issue in the case was identification of Johnson by eye witnesses as one of three individuals who participated in the bank robbery. In his opening statement, his cross-examination of the government's witnesses, his direct examination of Johnson, his successful objections to the admissibility of damaging evidence and in his closing argument to the jury, he rendered reasonably effective service.

### III.

■ Finally, appellant insists that in its charge relating to the offense of unlawfully carrying a firearm during the commission of a felony, 18 U.S.C. § 924(c)(2), the court erred in failing to instruct the jury that the possession of the firearm must be unlawful.[10] Here, as in *United States v. Rojas,* 502 F.2d 1042, 1045 (5th Cir.1974), the court read to the jury the indictment, the applicable statute and enumerated the essential elements of the crime. We have carefully considered the jury charge as reported in the trial transcript and conclude that it was adequate.

AFFIRMED.

**10.** Since Johnson's court-appointed counsel made no objection to the court's charge, after having been afforded an opportunity to do so, appellant must show under the plain error rule that his rights were adversely affected and that a manifest miscarriage of justice occurred. *See United States v. Resnick,* 488 F.2d 1165 (5th Cir.1974).